Gregory W. Mitchell
THE MITCHELL LAW FIRM, L.P.
8140 Walnut Hill Lane, Suite 301
Dallas, Texas 75231
(972)463-8417
Facsimile: (972)432-7540
State Bar ID: 00791285

ATTORNEYS FOR THE DEBTORS

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 11-41092** |
| | § | |
| **GEORGE D WIGINGTON AND** | § | |
| **TERESA L WIGINGTON,** | § | **Chapter 11 (conv from 13)** |
| | § | |
| Debtors. | § | |

**FEBRUARY 6, 2013**

**DEBTOR'S SECOND JOINT COMBINED PLAN AND DISCLOSURE STATEMENT**
**(Small Business Case)**

COMES NOW GEORGE AND TERESA WIGINGTON ("Individual Debtors") and Wylie Investment Group ("Partnership Debtor), collectively "Debtors" and propose the following Combined Plan and Disclosure Statement ("the Plan") pursuant to 11 U.S.C. §§1121 through 1125.

On April 4, 2011, the Debtors filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. The case was filed in the United States Bankruptcy Court for the Eastern District of Texas. On April 12, 2011 pursuant to Debtors' Motion to Convert, the case was converted to Chapter 11 by Order of the Court, and has been designated as a small business case. On February 6, 2013, Wylie Investment Group filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. Contemporaneous with the filing of this Plan, Debtors have filed a Motion seeking a determination by the Court that the Plan provides adequate information as defined by 11 U.S.C. §1125(a) and that a separate disclosure statement is not necessary in accordance with 11U.S.C. §1125(f)(1).

## TABLE OF CONTENTS

ARTICLE 1 -  INTRODUCTION AND USE OF TERMS ......................................................... 3

ARTICLE 2 -  PRECONFIRMATION HISTORY AND INFORMATION ............................. 6

ARTICLE 3 -  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS…… 7

ARTICLE 4 -  LIQUIDATION ANALYSIS, IMPLEMENTATION, FEASIBILITY & RISKS. 7

ARTICLE 5 -  EXECUTORY CONTRACTS ................................................................. 8

ARTICLE 6 -  CLAIMS ADMINISTRATION .............................................................. 14

ARTICLE 7 -  DEBTORS' CAUSES OF ACTION…………………………………………… 15

ARTICLE 8 -  EFFECT OF CONFIRMATION……………………………………………….. 15

ARTICLE 9 -  MODIFICATION OF PLAN ................................................................ 16

ARTICLE 10 - MISCELLANEOUS PROVISIONS .................................................................. 17

ARTICLE 11 - RETENTION OF JURISDICTION .................................................................. 18

## ARTICLE 1: INTRODUCTION  AND DEFINITION OF TERMS

**1.01.**   **Concept of the Plan.**  This Plan is a plan of reorganization.  The Individual Debtors shall continue to operate their businesses after the Confirmation Date which will maximize return to creditors.

**1.02.**   **Hearing**.  The Bankruptcy Court will schedule a hearing on the approval of the Debtors' Chapter 11 Plan.  Creditors and other parties entitled to receive notice shall be notified of the hearing.  Holders of claims will be entitled to vote with respect to the Plan, if eligible.  Acceptance of the Plan by each holder is important.  The Plan might not be confirmed unless sufficient votes accepting the plan are cast.  If the Plan is not confirmed, the distributions to creditor detailed herein will not be made.

**1.03.**   **Representations.**  No Representations concerning the Debtors, the value of their property, or the value of benefits offered to holders of claims in connection with the Plan are authorized by the Debtors other than as set forth in this Plan.  You should not rely upon any representation or inducement made to secure your acceptance which is contrary to information contained in this Plan, and any such additional representation and inducement should be reported to the Counsel for the Debtor, Gregory W. Mitchell, 8140 Walnut Hill Lane,  Suite 301, Dallas, Texas  75231.

The information contained in this Plan has not been independently audited.  Although every reasonable effort has been made to ensure its accuracy, the Debtors are unable to warrant that all of the information is without any inaccuracy.  Approval of the Plan by the Court shall not constitute a guarantee of the accuracy or completeness of the information contained herein.

**1.04.**   **Explanation of Chapter 11.**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to Chapter 11, the Debtors are enabled either to attempt to reorganize their business for their benefit and that of their creditors and other parties in interest, or to effect a controlled liquidation that often realizes a higher value for the assets sold than would be the case in a Chapter 7 liquidation.  Formulation of a plan is a principal purpose of a Chapter 11 reorganization case.  A plan sets forth the means for satisfying, to the extent possible, the holders of claims against the Debtors.

After a Chapter 11 plan has been filed in a case, the holders of claims against or  interest in the Debtors whose claims or interests will be adversely affected by the plan must be given the opportunity to vote to accept or reject the plan.  In an effort to insure that those parties with an opportunity to vote possess sufficient information to make informed judgment about the proposed plan, §1125 of the Bankruptcy Code requires disclosure of adequate information.  This Plan is intended to satisfy the requirement of providing adequate information and eliminate the need for a separate disclosure statement.

Chapter 11 does not require that each holder of a claim against the Debtors vote in favor of the Plan in order for the Court to confirm the Plan.  The Plan however must be accepted by at least one class of claims.  The Plan is deemed accepted by a class of claims if the Plan is accepted by a majority in number and two-thirds in dollar amount of the claims of such class actually voting in connection with the Plan.

Even if all classes of claims and interests accept the Plan, the Bankruptcy Court may refuse to confirm the Plan if either the Plan or the Debtors fail to comply with all applicable provisions of the Bankruptcy Code, if the Plan has not been proposed in good faith or by lawful means, or for other

reasons set forth in §1129 of the Bankruptcy Code.

Conversely, the Bankruptcy Court may confirm the Plan even though less than all of the claims and interests accept the Plan.  The circumstances under which the Bankruptcy Court may confirm the Plan over the objection of one or more classes of claims or interests are set forth in §1129(b) of the Bankruptcy Code and, among other requirements, include the requirement that the Bankruptcy Court find, with respect to each class that does not accept the Plan, that the Plan does not discriminate unfairly against such class, is fair and equitable to such class, and generally that the value to be distributed to the members of such class will not be less than the amounts that holders of claims in such class would receive if the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code.  Further, with respect to a dissenting class of unsecured claims which is impaired under the Plan, the Code requires that the holder of any such claim or interest that is junior to the claims of such dissenting class will not receive or retain under the plan on account of such junior claim or interest any property, unless the debtors are individuals as they are in this case.  The Debtors in an individual case may retain property included in the estate, subject to payment of any domestic support obligation that the debtors are required by judicial or administrative order to pay.  The Debtors, in this case, do not owe a domestic support obligation.  The Debtors will, and do, seek confirmation of this Plan under §1129(b) of the Bankruptcy Code if less than all classes accept the Plan.

Confirmation of the Chapter 11 Plan does not discharge the Debtors from any debt provided for in the plan until the Court grants a discharge on completion of all payments under the Plan, unless after notice and hearing, the Court orders otherwise.  Confirmation of the Chapter 11 Plan makes the Plan binding upon the Debtors, their creditors and all parties regardless of whether or not they have accepted the Plan of Reorganization.

**1.05.    Defined Terms.** Unless the context otherwise requires, terms shall have the meanings set forth in this section 1.05 when used in this Combined Plan and Disclosure Statement.

**1.05.01 Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtors and Debtor's property under 28 U.S.C. Section 1930.

**1.05.02 Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order. This includes all Claims deemed unsecured pursuant to §506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

**1.05.03 Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, which to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.05.04 Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101, *et seq.*, as amended.

**1.05.05 Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.05.06 Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure.

**1.05.07 Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.05.08 Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.05.09 Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.05.10 Claimant** means any person or entity having or asserting a Claim in the case.

**1.05.11 Class or Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.05.12 Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.05.13 Confirmation Date** means the date on which the Confirmation Order is final.

**1.05.14 Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**1.05.15 Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.05.16 Contested** when used with respect to a Claim, means a Claim against the Debtor (a) if no Proof of Claim was filed, a claim that is listed in DEBTOR's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated and that is not allowed pursuant to this Plan; (b) a claim that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) if a Proof of Claim was filed, a claim as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.05.17 Conversion Date** means April 12, 2012, the date of the Order Converting the Debtor's Chapter 13 case to a Chapter 11 Case.

**1.05.18. Conversion Trust Account.** The trust account, administered by Debtors' Chapter 11 counsel, Gregory W Mitchell, set up pursuant to the Order Converting the Case to Chapter 11 [DOC #123] into which the Chapter 13 Trustee deposited the sum of $28,119.54, representing the balance of the Debtor's pre-conversion Chapter 13 Plan payments after Payment of $8,732.46 to American National Bank of Texas for adequate protection payments proposed in Debtors' Chapter 13 Proposed Plan. One payment ordered by the court for $2,000 has been distributed from the account, leaving a balance of $26,119.54 as of the time of filing this Plan.

**1.05.19   Creditor** shall have the meaning specified by Section 101(10) of the Code.

**1.05.20   Debtors** means George D Wigington, Teresa L Wigington and Wylie Investment Group

**1.05.21 Disputed Claim** means any Claim that is not an Allowed Claim.

**1.05.22   Effective Date** means the first business day that is sixty days after the Confirmation Date.

**1.05.23   Estate** means the estate created on the Petition Date pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.05.24 Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case and/or Chapter 13 case.

**1.05.25   Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.05.26 Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition *for petition for certiorari,* or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari,* stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari,* or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

**1.05.27 General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.05.28 Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.05.28 Individual Debtors** means George D Wigington and Teresa L Wigington

**1.05.29.     Order for Relief under Chapter 11** means the Court Order granting conversion and relief under Chapter 11 of the Bankruptcy Code entered on April 12, 2012.

**1.05.30   Partnership Debtor** means Wylie Investment Group.

**1.05.30    Petition Date** means April 4, 2011, the date the Individual Debtors' original Chapter 13 petition was filed commencing this bankruptcy case and February 6, 2013, the date the Partnership Debtor's Chapter 11 Petition was filed.

**1.05.31   Plan** means this Combined Plan and Disclosure Statement, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.05.32   Pre-petition** means prior to the Petition Date.

**1.05.33   Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.05.34   Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.05.35   Property of the Estate** means all property in which the Debtor or its bankruptcy Estate holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.  The Debtor shall remain in possession of all property of the Estate unless provided for otherwise in the Plan or Confirmation Order.

**1.05.36    Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.05.37   Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor or the Estate has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.05.38 Secured Tax Claim** means any Tax Claim secured by real or personal property.

**1.05.39   Secured Creditor or Secured Claimant** means any Claimant holding a Secured Claim.

**1.05.40 Unimpaired** means not Impaired.

**1.05.41 Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor other than a Priority Claim or Administrative Claim.

**1.05.42 Unsecured Claimants or Unsecured Creditors** means any holder of an Unsecured Claim.

**1.05.43 Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.06     Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.07    Terms Defined in the Bankruptcy Code.** Terms not specifically defined in section 1.05 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.08    Headings.** The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.09    Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

**ARTICLE 2
HISTORY OF THE DEBTORS' BUSINESS,
MATERIAL PRE-CONFIRMATION EVENTS AND
STATEMENT OF FINANCIAL CONDITION**

**2.1.    History of the Debtors' Business.** At the time Debtors filed for Bankruptcy Protection under Chapter 13 of the United States Bankruptcy Code on April 4, 2011, George Wigington was operating a commercial cabinet shop doing business as Wylie Industries. Teresa Wigington was employed by a regional municipal district as an accounting manager.

Teresa Wigington has been with her current employer for over ten years. The Debtors believe her employment is very stable.

George Wigington and Benny Wigington formed a Texas general partnership, Wylie Industries, in July of 2002. They subcontracted work from local general contractors for commercial cabinets.

As the business grew, the building they leased for the manufacturing facilities became very cramped and impeded efficient operations. George Wigington and Benny Wigington decided to form a Texas general partnership, Wylie Investment Group, to purchase and hold a commercial building to house the manufacturing operations of Wylie Industries. The new building in Pilot Point, Texas, was closed on in August of 2008. By August of 2009, the complete collapse of the local residential construction market drove a large number of residential cabinet shops to enter the commercial construction market where Wylie Industries operated. Revenue for Wylie Industries declined steadily due to the increased competition and financial difficulties for both partnerships mounted. In the spring of 2010, Benny Wigington was forced to abandon the partnerships due to lack of income from the partnerships.

In June of 2010, one of the general contractors Wylie Industries had been working for reduced the amount of the final payment for work completed by $16,984.17. The contractor claimed that Wylie Industries was responsible for the entire amount of liquidated damages assessed the contractor by the owner of the project. Wylie Industries objected to the reduction in their payment and requested backup for the damages claimed. No documentation was ever provided, and the contractor refused to reconsider. This reduction in revenue greatly impacted the ability of Wylie Industries to maintain the schedule for other  works in progress.

To make things worse, in July of 2010, First United Bank and Trust withdrew funds from the Wylie Industries Partnership checking account to pay three mortgage payments that the Wylie Investment Group Partnership was behind on. Despite the fact that the Wylie Industries Partnership had no liability for the payment of the mortgage payments, and despite the fact that no one authorized the bank to do so, First United Bank and Trust debited the Wylie Industries account for $9,872.92. This unauthorized withdrawal effectively shut down Wylie Industries. Without funds to pay workers and purchase

materials, Wylie Industries could not keep up with the projects they were working on, and the situation began to unravel.

In July 2010, the partnership interest of Benny Wigington was redeemed by the partnership, and George Wigington, sole remaining partner, terminated operations of Wylie Industries, a Texas General Partnership.  All partnership assets were sold to George Wigington for $40 cash and the assumption of all partnership liabilities.

In December 2010, George Wigington filed an involuntary Chapter 11 Bankruptcy case against Wylie Investment Group, a Texas General Partnership.  That bankruptcy filing was dismissed in March of 2011.  On March 31, 2011 the partnership interest of Benny Wigington was redeemed by the partnership.  On April 1, 2011, George Wigington, sole remaining partner, converted the Texas general partnership to a sole proprietorship.  All partnership assets and all partnership liabilities were assumed by George Wigington.

On April 4, 2011, the Individual Debtors filed for Chapter 13 bankruptcy protection to attempt to reorganize their financial situation.

George Wigington currently operates a sole proprietorship, dba Wylie Industries, concentrating on smaller commercial projects and provide drafting, machining, assembly and installation services to other area cabinet shops.   Teresa Wigington continues to work for  the same employer.

George Wigington believes that the reduction of debt load via the current bankruptcy and minimization of expenses will allow the business to operate profitably and slowly and safely increase revenues.  Restructuring the debt on the Pilot Point property will allow the income from the Wylie Industries cabinet shop operations to support the payments on the building mortgage, property taxes and insurance.   The commercial cabinet mark has solidified somewhat, and the Debtors expect continued, albeit slow, improvement in the coming years, barring another major downturn in the economy.

With the stable income of Teresa Wigington along with slowly growing income from Wylie Industries coupled with the reduction of debts and expense outflows; the Debtors believe they can return to profitability.

The Debtors also have two other sources of minor income.  George Wigington receives an annual stipend of  $ 4,958.48 from a Voluntary Separation Incentive from the US Navy.  This payment will be received until March of 2015.   George Wigington purchased 2 swine in April of 2011 for the production of pork to reduce household grocery bills and to allow for the sale of swine to produce a small amount of additional income.  Debtor currently has 17 swine (2 original and 15 offspring).  It is expected that market ready swine will be sold twice a year.  Debtors expected to expand these operations to include 3 cattle for production of market cattle.  The operations will take place on property owned by the Debtors.  The Debtors purchased large water storage tanks in June, 2012, to allow irrigation of Debtors property to enable sufficient production of hay/ grains to support all of the anticipated ranching operations with little cost for feed and water.  These farm operations are expected to produce a small annual income and reduce debtors' grocery expenses.  The income generated from the these farm operations have been much smaller than originally expected and are not reliable enough to use in calculation of income.

## 2.2.    Material Pre-Confirmation Events.

### 2.21.    Chapter 13.    The Debtors filed a voluntary petition under Chapter 13 on April 4, 2011.  Despite considerable efforts to confirm a Chapter 13 plan, the debtors eventually realized that a Chapter 11 filing was required for an effective reorganization.   The Debtors filed a Motion to Convert

which was approved and the Court issued an Order converting the case to one under Chapter 11 on April 12, 2012.

**2.22.    Schedules.**    The Debtors filed their initial Chapter 13 Schedules on May 13, 2011.  Many Amended Schedules were filed while the Chapter 13 case was pending.  The Debtors have filed a set of amended Chapter 11 schedules contemporaneous with the filing of their First Combined Plan and Disclosure statement.

**2.23.    Employment of Attorneys.**    Michael Wiss acted as counsel for Debtors during most of the Chapter 13 period of this case.  Michael Wiss was granted permission to withdraw as Debtors' counsel on April 4, 2012.  Debtors filed an Application to Employ The Mitchell Law Firm, L.P. on May 4, 2012.  The Motion was approved by Court Order on May 31, 2012.  Debtors paid $1,500 to Gregory W. Mitchell who is holding the funds pending submission and approval of administrative legal fees.

**2.24.    Meeting of Creditors and Operating Reports.**    The Debtors attended a Chapter 13 Meeting of Creditors on May 19, 2011, and a Chapter 11 Meeting of Creditors on May 18, 2012.  The Debtors have filed all required Chapter 13 and Chapter 11 monthly operating reports.

**2.25.    Stay Litigation.**    Four (4) creditors have filed Motions to Modify or Lift the Automatic Stay.

**(a) Lift of Stay Granted**    JP Morgan Chase and Navy Federal Credit Union filed Motions to Lift Stay with regard to 411 Dogwood Drive, Wylie, Texas,  which were unopposed and approved by the Court on September 26, 2011, and September 20, 2011, respectively.

**(b)  Modification of Stay Granted**    First United Bank and Trust filed a Motion to Lift Stay and was granted adequate protection payments and other relief per Order of the Court with regard to their collateral (216 W Grove, Pilot Point TX, Hensley Lane, Wylie TX,  misc personal property).  American National Bank filed several motions relating to Lifting/ Modifying the Stay and was granted adequate protection payments and other relief per Order of the Court with regard to their collateral (CNC, etc.)

**2.26.  Chapter 13 Plan Payments.**    Prior to conversion of the Debtors' Chapter 13 case to Chapter 11, the Debtors made 12 plan payments totaling $36,852.00.  Pursuant to Order of the Court, these funds were dispersed by the Chapter 13 Trustee as follows:  American National Bank and Trust was paid $ 8,732.46 on June 19, 2012.  The remaining funds, $28,119.54, were paid to Gregory W. Mitchell, Debtors' counsel, for deposit in the Conversion Trust Account pending future court order.  To date, one distribution from the account in the amount of $2,000 has been made to Michael Wiss for legal fees pursuant to Order of the Court.  As of the Date of filing this plan, the Conversion Trust Account holds $26,119.54.

**2.27  Conversion of Wylie Investment Group Partnership**    In the confirmation hearings on the Individual Debtors First Plan during January 2013, the Court found that the attempted Conversion of the Wylie Investment Group Partnership to a sole proprietorship of George D. Wigington was legally ineffective.  The Court also ruled that the  real and personal property of Wylie Investment Group were not the property of the Individual Debtors and were not property of the Individual Debtor's estate.

**2.3.    Statement of Financial Condition.**

      **2.31.**  <u>**Assets.**</u>  Debtors' assets include both real and personal property.  The valuations contained herein are the Debtors' opinion unless noted otherwise.

(a)  Assets of Individual Debtors

**(1)** <u>**Elm Grove Property**</u> – The Individual Debtors' homestead consists of a home on 5.397 acres located at 2451 Elm Grove Road, Wylie, Texas.  The property is listed as separate tracts by the Dallas County Tax Appraisal district, but both tracts are included in the deed, deed of trust and loan paperwork.  The Debtors estimate the value of the Elm Grove property to be $311,950.00.  The Dallas County Central Appraisal District appraised the property at $311,950 for 2012.  Citi-Mortgage holds a first lien on the property and filed a Proof of Claim in the amount of $159,937.34, including $1,065 in arrearage.  The Individual Debtors claim a homestead exemption on all equity in this property.

**(2)** <u>**Hensley Lane Property**</u> – The Individual Debtors own undeveloped land (8.7 acres) on Hensley Lane, Wylie, Texas.  The Debtors learned in late July of 2012 that approximately 6.21 acres lie within a flood zone, and all development/ building is prohibited by city code.  Previously, Debtors believed that only 3.7 acres were in the flood zone.  The Collin County Central Appraisal district appraises acreage in this area at $30,000/ acre in general and $3,000 an acre for land in the flood zone.  The value of the property using these acreages and valuations would be $93,630.  The Debtors currently estimate the value of the property to be $111,130.  The Debtors have filed an objection to the valuation of the property with the appraisal district.  The hearing before the Appraisal Review Board has not been scheduled.  The balance the Individual Debtors owe to the Texas Veterans Land Board (TVLB) was $43,478 as of the Petition Date.  This balance and the $375 deed transfer fee is in effect a first lien on the property in the amount of $43,853.  The ad valorem tax authorities have filed unsecured priority claims totaling $6,347.61.  This claim is entitled to post-petition interest at the rate of 12% per annum and is estimated to total $7,968.68 as of the date of this Plan.  Although these tax amounts do not attach to the land (because the State holdss legal title), they are the equivalent of a second lien because prior to the TVLB transferring title to Debtor (or Debtors' successor in interest) they require proof that the ad valorem taxes have been paid.  The First United Bank and Trust holds a third lien on the balance of the equity in the property estimated to be $59,315.32.  The validity and perfection of the lien held by First United Bank and Trust is questionable in the Debtors' opinion.   Debtors' intend to pursue a consensual confirmation and leave this lien uncontested at this point in time.

**NOTE:  The Hensley Lane property is owned by the Texas Veterans Land Board who holds legal title.  The Debtors hold equitable title and a possessory  interest in the property by way of a Contract for Deed they executed with the Texas Veterans Land Board to purchase the property.  The Debtors interest in this property is an executory contract listed in Schedule G, not in Schedule A Real Property.  In some instances, the Debtors are treating the property as if they have legal title to allow a proper disclosure of the Debtors' assets.  Debtors do not waive any defense or benefit that arises from the actuality that the Debtors have an interest in the property via a contract for deed by including calculations, etc., showing it as real property asset of the Debtor/ Estate.**

**(3)** <u>**411 Dogwood Drive, Wylie TX**</u>  The Individual Debtors owned a house at 411 Dogwood Drive, Wylie TX on the Petition Date.  The Debtors estimate the value of the property to be $76,300.  JP Morgan Chase holds a purchase lien and Navy Federal Credit Union holds a home equity lien on this property.  These creditors obtained relief from stay, and JP Morgan Chase foreclosed on the property on February 7, 2012.  Debtors' are unsure if the foreclosing creditor had a perfected lien in the property at the time the petition was filed and are unsure if the foreclosure proceeding was legally conducted.

**(4)  Personal Property.**  The Individual Debtors' personal property is valued by the Debtors at $193,646.25 on Schedule B.  This property has liens valued at $58,201, and the Debtors claim $103,387.17 in exemptions on Schedule C.  The Gross value of Debtors' non-exempt property is $32,058.08.  The personal property values are based upon the Debtors' personal opinions.

**The personal property is further detailed in the Debtors' Schedule B & C.  The property includes cash, checking accounts, retirement accounts, accounts receivable, household property, etc., including property once own by Wylie Industries, a Texas General Partnership which the Debtors now claim as their personal property via the termination and sale partnership assets.**

**(5)  Conversion Trust Account.**  The Individual Debtors and/or the Individual Debtors' estate has interests in the Conversion Trust Fund Account held by Debtors' counsel which has an account balance of $26,119.54 as of the date of filing this plan.  The Individual Debtors claim all or a portion of this account as exempt upon the conversion of the Individual Debtors Chapter 13 case to a Chapter 11 case.  The status of the funds will be determined by Court ruling either at the Confirmation hearing or at a earlier hearing after notice, if Debtors elect to file a separate motion.

(b)  Assets of Wylie Investment Group

**(1)  Pilot Point Property** – The Partnership Debtor owns a commercial building on 1.92 acres at 216 W. Grove Street, Pilot Point, Texas.  The building is used in the operations of Wylie Industries.  The Debtors estimate the Value of the Pilot Point property to be $298,000.  The Denton County Central Appraisal District (Denton CAD) appraised the property at $446,000 in 2011.  In 2012, the Denton CAD originally appraised the property at $392,505.  The Partnership Debtor protested the appraised value to the Denton County Appraisal Review Board (Denton CARB) and was denied relief.  The Partnership Debtor then appealed the ruling of the Denton CARB with the Denton County District Court and has reached an agreed appraised value of $298,000 with the Denton CAD.  The settlement agreement is being processed and will be submitted to the District Court when it is processed.  Denton County Tax Assessor holds the senior lien for ad valorem taxes and filed a Proof of Claim in the amount of $38,602.37 in the Individual Debtors case.  It is expected that the Denton County Tax Assessor will file a claim for Tax Years 2009, 2010, 2011 and 2012 totaling approximately $59,994.54 in the Partnership Debtor's case and withdraw the claim filed in the Individual Debtor's case.  This claim is entitled to post-petition interest at the rate of 12% per annum.   First United Bank and Trust has a purchase lien on the building which the Debtors estimate will become an allowed secured claim of $238,005.46.
.

**(2)  Personal Property.**  The Partnership Debtor's personal property  is valued by the Debtors at $30,000 on Schedule B.  The personal property values are based upon the Debtors' personal opinions.

**2.32.**   **Claims.**  The Debtors have the following liabilities.

(a)  Liabilities of the Individual Debtors

**(a)  Government Liabilities.**   The IRS has filed an amended claim with $10,774.00 in priority debt and $2,134.40 in unsecured debt for tax years 2010 and prior.  Debtors filed

an extension for their 2011 taxes and estimate their tax burden will be less than $1,000.00.   The 2011
income tax filing is late and will be filed no later than March 1, 2013.  The 2011 income taxes will be
paid course of business.   The Wylie ISD and Collin County Tax Assessor/ Collector have filed secured
claims for ad valorem taxes on the Hensley Lane property in the amount of $6,347.17, which is estimated
to have grown to $ 7,961.68 with accrued interest.   Although claimed as secured, these ad valorem taxes
are actually unsecured claims due to their failure to attach to the property assessed.  The Debtors are
current on the ad valorem taxes on their homestead on Elm Grove.  The City of Wylie and Collin County
have filed ad valorem tax claims for taxes assessed on 411 Dogwood Drive, Wylie Texas.  This property
was foreclosed on by JP Morgan Chase on February 7, 2012, and is abandoned in this Plan.  The
Individual Debtors intend to object to the claims filed for ad valorem taxes assessed on 411 Dogwood
Drive, Wylie Texas because they have been satisfied by JP Morgan Chase.

**(b)  Secured Claims**.  American National Bank has filed an amended secured
claim of $37,527.08.  Debtors dispute the claim amount and Debtors' value the collateral (CNC, etc)
securing this claim at $33,475.04.  Citi-Mortgage has filed a secured claim of $159,937.34, representing
arrearage and balance due on Debtors' homestead on 2451 Elm Grove Road, Wylie TX.  First United
Bank and Trust has filed a secured claim in the amount of $383,115.87.  Debtors dispute the claim
amount and Debtors value the property (Hensley Lane,) securing this claim at $59,315.32 after deducting
senior claims.

JP Morgan Chase and Navy Federal Credit Union have liens on 411 Dogwood Drive, Wylie TX .  These
creditors obtained relief from stay, and JP Morgan Chase foreclosed on the property on February 7, 2012.
Neither JP Morgan Chase nor Navy Federal Credit Union have filed claims and the Debtors do not expect
them to file any claims in this case.

**(c) Unsecured Claims.**  The IRS has filed a priority claim as noted in Subsection
(a) above with an unsecured claim in the amount of $2,134.40.  In addition, other general unsecured
creditors have filed $213,754 in unsecured claims.  The Court's Claim Log incorrectly shows the Claim
by American National Bank of Texas to be an unsecured claim and overstates the true value of unsecured
claims filed to date.  Debtors estimate the final General Unsecured Claim Class will have between
$160,000 and $249,000 in allowed unsecured claims.

**(d)  Executory Contracts**.   The Debtors owed $43,478 as of the Petition Date
for the balance on the executory contract for the purchase of Hensley Lane Property from the Texas
Veterans Land Board.  The Debtors intend to assume this executory contract.  The Debtors are current on
this obligation and believe no cure claim will be filed.  The executory contract with T-Mobile will be
rejected.

(b)  Liabilities of the Partnership Debtor

**(1)  Government Liabilities.**   Denton County Tax Assessor has filed a
secured claim in the amount of $38,602.17 for ad valorem property taxes on the Pilot Point Property in
the Individual Debtors case.  It is expected that the Denton County Tax Assessor will file a secured claim
in the Partnership Debtors case in the amount of $ 59,994.54 for tax years 2009, 2010, 2011 and 2012.
The 2013 property taxes will be paid in the normal course of business when due and payable.

**(2)  Secured Claims**.  First United Bank and Trust has filed a secured
claim in the amount of $383,115.87 in the Individual Debtors case.  It is anticipated that FUB&T will file
a secured claim in the Partnership Debtors case in a similar or larger amount.  Debtors dispute the claim
amount and Debtors value the property (216 W. Grove Street, Pilot Point TX, misc personal property)
securing this claim at $242,255.

**(3)** **Unsecured Claims.**  The unsecured portion of FUBT's claim against Wylie Investment Group is the only claim expected in this Class.

**(c)  Liabilities Between the Individual Debtors and the Partnership Debtor**

Upon confirmation, all debts, claims and liabilities between the Individual Debtors and the Partnership Debtor are cancelled and extinguished.  The information provided is to provide disclosure of the relationships between the debtors and to allow for determination of the rights various creditors and claimants are entitled to.

**(1)  Individual Debtors liability to Partnership Debtor**

**(A)  Wylie Investment Group** holds a claim for rent due from August 2010 to February 2013.  The total amount of this claim is $99,448.00.  This claim is partially secured by a statutory Landlord Lien in an amount equal to the rent due for 6 months in the past and for 12 months in the future per the Texas Property Code Chapter 54 SubChapter B.  This lien is calculated to be a maximum of $57,440 (18 months at $3,208 per month.)   This property that secures this lien is the unencumbered non-exempt property of Wylie Industries that is located in the Pilot Point property.  The value of this property is listed at $25,750 on the Partnership Debtors Schedule B.  This results in a secured claim in the amount of $25,750 and an unsecured claim in the amount of $73,698.00.

**(B)  Wylie Investment Group** holds a $50,000 unsecured claim for moneys loaned to Wylie Industries for moving and equipment setup costs.

**(2)  Partnership Debtors liability to Individual Debtors**

**(A)  The Individual Debtors** hold a contingent unsecured claim equal in amount the equity they would have in the Hensley Lane property absent the lien granted to secure the claim on the loan to Wylie Investment Group from First United Bank and Trust.  This results in an contingent unsecured claim in the amount of $59,315.32.

**2.33.**   **Post-Petition Income and Expenses.**  The Debtor's post-conversion income and expenses are set forth in the Debtors' Monthly Operating Reports filed with the Court.

**ARTICLE 3**
**CLASSIFICATION AND TREATMENT OF CLAIMS**
**AND INTERESTS**

**3.1.**   **Treatment of Claims.** This Plan is intended to resolve all Claims against the Debtor  and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.2.**   **Unclassified Claims.**  The following Unclassified Claims shall be treated as described

below.  The treatment of these Unclassified Claims is mandated by the Bankruptcy Code, and therefore these Claimants are not permitted to vote.

   **3.21.** **Allowed Administrative Expense Claims.**  The holder of an Administrative Expense Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, notice of such Administrative Claim and, if applicable, a fee application within sixty (60) days after the Effective Date.  Provided, however, the notice requirement and deadline for filing a fee application shall not apply to the Debtors' Chapter 11 counsel.

   Absent an agreement to the contrary with the claimant, the Debtor will pay all Allowed Administrative Expense Claims including Professional Fees in full upon the later of (a) the Effective Date of the Plan or (b) within fourteen (14) days following approval of Professional Fees and Expenses, pursuant to an application filed with the Bankruptcy Court.

   Debtor's CH11 bankruptcy counsel is Gregory W. Mitchell of the firm The Mitchell Law Firm, L.P. of Dallas, Texas.  As of the date of this Plan, Debtor's post-petition attorneys fees and expenses are estimated at $13,5000.00.  The Mitchell Law Firm, L.P. holds a retainer in the amount of $1,500 for the post-petition services.  The Mitchell Law Firm, L.P. has not filed an application for fees and expenses to date.   If the Debtors' obtain a consensual Plan, additional pre-confirmation professional fees and expenses are estimated to be $2,500.00  Without a consensual plan approval, the additional pre-confirmation fees and expenses will increase depending upon the nature of the opposition to the Plan. Furthermore,  post-confirmation services will result in additional fees and expenses.  Post-petition attorneys fees and expense as approved shall be paid in the normal course of business.

   Debtor's CH13 bankruptcy counsel was Michael Wiss.  As of the date of this Plan, Michael Wiss has filed an application for fees and expenses totaling $4,000 which was approved by the Court.  Debtors initially paid a $2,000 pre-petition retainer and the remaining balance of $2,000 was paid from the Conversion Trust Account on July 1, 2012.

   Post-Confirmation expenses which are incurred in the normal course of business necessary for the support of the Debtors and the estate in order to preserve and continue the income generated by the Debtors and necessary for the execution of the plan will be paid in the normal course of business.

   **3.22.** **Allowed Unsecured Priority Tax Claim (IRS)**  Once allowed, each holder of an Allowed Claim for unsecured priority taxes shall be paid the Allowed amount of the Claim pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code as follows:  The Allowed Priority tax claim of the IRS which is estimated to be $10,774.17 shall be paid in full in regular monthly installment payments, beginning 30 days after  the Effective Date and continuing on the same day of each month thereafter until the Allowed Claim has been paid in full.  The repayment term shall not exceed five years from the Date of the Order for Relief under Chapter 11.   Post-confirmation taxes shall be paid in the normal course of business.

   **3.23.** **Allowed Unsecured Priority Ad Valorem Tax Claims (Wylie ISD, Collin County Tax Assessor/Collector)**  Once allowed, each holder of an Allowed Claim for unsecured priority taxes shall be paid the Allowed amount of the Claim pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code as follows:  The Allowed Priority ad valorem tax claim of the these tax authorities, which is estimated to total $7,961.68, shall be paid in full in monthly installments, beginning 30 days after  the Effective Date and continuing on the same day of each month thereafter until the Allowed Claim with interest as provided herein has been paid in full.  The repayment term shall not exceed five years from the Date of the Order for Relief under Chapter 11.  Post-confirmation ad valorem taxes shall be paid in the

normal course of business.

The ad valorem taxes that give rise to this class of claims were assessed on property (Hensley Lane) that the Debtors have entered into a Contract for Sale (Contract for Deed) with the Texas Veterans Land board to purchase.  As such, legal title remains with the Texas Veterans Land Board preventing the attachment of any lien to the assessed property for the assessed taxes.  Debtors have only equitable title and a possessory interest in the property as of the date of this Plan.

**3.24.   United States Trustee Fees**.  Pursuant to 28 U.S.C. §1930(a)(6), the statutory fees of the United States Trustee shall be paid on the Effective Date.   Post-Confirmation fees will be paid as such fees become due and payable in the normal course of business.

**3.3.   Classified Claims and Interests.**  Claims are classified into the following 10 Classes, and details on the treatment of each class of claims are provided below.  Each class is noted as to its impairment and to which class its vote will be included in.  Eligibility to vote shall be determined in accordance with U.S.C. §1126.  Classes, in which no votes are cast, are deemed to have accepted the Plan.

**3.31.   Class One - Secured Claims of Denton County.**  (216 W Grove, Pilot Point). Once allowed, the Allowed Secured Claim of Denton County for ad valorem taxes for 2009, 2010, 2011 and 2012 shall be paid with interest at the statutory rate of 12% per annum in regular quarterly installment payments, beginning 60 days after  the Effective Date and continuing on the same day of each quarter thereafter until the Allowed Secured Claim with interest as provided herein has been paid in full.  The repayment period shall not exceed 10 years.  Denton County shall retain their statutory liens until their allowed secured claim is paid in full.  Class One is impaired and is allowed to vote in Class 1.

**3.32.   Class Two – Secured Claim of Citi-Mortgage.**  (Individual Debtors' homestead at 2451 Elm Grove, Wylie, Collin County, Texas)  The Allowed Secured Claim of CitiMortgage on the Debtors' home shall be paid in accordance with the existing contract with CitiMortgage.  All terms of the pre-petition contract remain unchanged except as modified herein and will be considered current upon confirmation.  The Arrearage Amount of $1,065.31 shall be paid in regular monthly payments over a period not to exceed 24 months from the Effective Date.  The arrearage claim shall accrue interest from the effective date until paid in full.  Arrearage payments shall be applied exclusively to arrearage claim. Citi-Mortgage shall retain their lien until their Allowed Secured Claim including Arrearage is paid in full. Class Two is impaired and is allowed to vote in Class 2.

**3.33.   Class Three – Secured Claim of American National Bank.**  (Komo CNC, etc) Except to the extent American National Bank of Texas (ANBT) agrees to a different treatment, ANBT shall receive, in full satisfaction of such Allowed Secured Claim, at the sole option of the Reorganized Debtors, either (i) cash in an amount equal to one hundred percent (100%) of the amount of such Allowed Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Secured Claim to the extent of the value of the holder's secured interest in such Collateral, (iii) the Collateral securing such Allowed Secured Claim, or (iv) such other distribution as necessary to satisfy the requirements of Section 1124 of the Bankruptcy Code.  In the event the Reorganized Debtors treat a claim under clause (i) or (ii) of this Section, the Lien securing such Secured Claim shall be deemed released. Otherwise, ANBT shall retain their lien until the Allowed Secured Claim is paid in full.  Class Three is unimpaired.

**3.34.   Class Four – Secured Claim of First United Bank and Trust.** (216 W Grove, Pilot Pt TX/ Hensley Lane, Wylie TX – 2nd Lien, /misc equip).  This class consists of the Allowed

Secured Claims held by FUBT which are secured by assets of Wylie Investment Group. Except to the extent First United Bank and Trust (FUBT) agrees to a different treatment, FUBT shall receive, in full satisfaction of such Allowed Secured Claim, at the sole option of the Reorganized Debtors, either (i) cash in an amount equal to one hundred percent (100%) of the amount of such Allowed Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Secured Claim to the extent of the value of the holder's secured interest in such Collateral, (iii) the Collateral securing such Allowed Secured Claim, or (iv) such other distribution as necessary to satisfy the requirements of Section 1124 of the Bankruptcy Code. In the event the Reorganized Debtors treat a claim under clause (i) or (ii) of this Section, the Lien securing such Secured Claim shall be deemed released. Otherwise, FUBT shall retain their lien until the Allowed Secured Claim is paid in full. Class Four is unimpaired and is note entitled to vote.

.       **3.35.   Class Five – Secured Claim of First United Bank and Trust.** (Hensley Lane Property, Wylie TX ). This class consists of the Allowed Secured Claims held by FUBT which are secured by assets of the Individual Debtors. Except to the extent First United Bank and Trust (FUBT) agrees to a different treatment, FUBT shall receive, in full satisfaction of such Allowed Secured Claim, at the sole option of the Reorganized Debtors, either (i) cash in an amount equal to one hundred percent (100%) of the amount of such Allowed Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Secured Claim to the extent of the value of the holder's secured interest in such Collateral, (iii) the Collateral securing such Allowed Secured Claim, or (iv) such other distribution as necessary to satisfy the requirements of Section 1124 of the Bankruptcy Code. In the event the Reorganized Debtors treat a claim under clause (i) or (ii) of this Section, the Lien securing such Secured Claim shall be deemed released. Otherwise, FUBT shall retain their lien until the Allowed Secured Claim is paid in full. Class Five is unimpaired and is not allowed to vote.

.       **3.36.   Class Six – Secured Claim of JP Morgan Chase.** (411 Dogwood Drive, Wylie TX)  Once allowed, the Allowed Secured Claim of JP Morgan Chase (JPMC) shall be treated as follows: The property securing the claim of JPMC shall be abandoned to the creditor in full satisfaction of the claim on the day after the deadline for objecting to claims has passed. JPMC conducted a non-judicial foreclosure on the property on February 7, 2012, after receiving relief from the automatic stay [DOC #50]. JPMC took possession and control of the collateral on the same day.  The Lien securing such the Allowed Secured Claim shall be deemed.  Class Six is unimpaired and is not entitled to vote.

.       **3.37.   Class Seven – Secured Claim of Navy Federal Credit Union.** (411 Dogwood Drive, Wylie TX – 2nd lien)  Once allowed, the Allowed Secured Claim of Navy Federal Credit (NFCU) shall be treated as follows:  The property securing the claim of NFCU shall be abandoned to the creditor in full satisfaction of the claim on the day after the deadline for objecting to claims has passed. JPMC, Class Six claims holder and holder of the senior lien on the collateral securing NFCU's claim, conducted a non-judicial foreclosure on the property on February 7, 2012,  after receiving relief from the automatic stay [DOC #48]. JPMC took possession and control of the collateral on the same day. The Lien securing such the Allowed Secured Claim shall be deemed. Class Seven is unimpaired and is not entitled to vote.

.       **3.39.   Class Eight  – General Unsecured Claims of Wylie Investment Group.**
Class Eight consists of the General Unsecured Claims of the Partnership Debtor. The Allowed Unsecured Claims of this class are entitled to a pro-rata share of all unencumbered assets of Wylie Investment Group, excluding unsecured liabilities of the Partnership sole partner George D Wigington to the Partnership, after all administrative and priority claims have been satisfied.  The listing and description of assets that determine the distribution to this class and informative only and do not limit the actual distributions to the amounts herein.  It is the intent that the distributions to Class 9 claim holders to be the amount they would receive in a Chapter 7 liquidation of the partnership.  These assets consist solely of the property securing the Building Landlords.  This property consists of all of the unencumbered non-

exempt property of the Individual Debtor located at the Pilot Point Property .  This property is valued at $25,750 and includes the following items listed on the Individual Debtors Schedule B under Line Item 29 - Machinery, fixtures, equipment and supplies used in business – " Production equipment – edgebander, dowel mach, rtrn conveyor, case clamp", "Broken machines – dowel ins, router, mitre", and " 40 laminate sheets".  All allowed unsecured claims of this class will share pro-rata in regular payments totaling $25,750 paid over a period not to exceed 60 months no interest paid or accrued.  Payments shall begin on the first day of the first month after the Effective Date.  All creditors with allowed unsecured claims in this class shall share pro-rata in each monthly distribution.  Holders of any General Unsecured Claim that is not paid in full from the distributions identified for Class Nine are entitled to have the unsatisfied portion of its claim participate in Class Nine.  Class Eight is impaired and is allowed to vote in Class 8. The Debtors estimate that the Allowed Unsecured Claims filed in Class Eight will be approximately $86,000.  The estimated distribution to this class is estimated to be approximately 30%.

**3.39.  Class Nine  – General Unsecured Claims of George and Teresa Wigington**
Class Nine consists of the General Unsecured Claims of the George and Teresa Wigington.  In addition, the General Unsecured claims against Wylie Investment Group (Class 8) that are not satisfied by the distributions of Class Eight are entitled to have the unsatisfied portion share pro-rata with the General Unsecured Claims of the Partnership's partner, George D.  Wigington.  All allowed unsecured claims of this class will be satisfied with a series of regular payments over a period not exceeding 60 months totaling $30,000.00 with no interest paid or accrued.  Payments shall begin on the first day of the second month after the Effective Date.  All creditors with allowed unsecured claims in this class shall share pro-rata in each monthly distribution.  Class Nine is impaired and is allowed to vote in Class 9.  The Debtors estimate the the Allowed Unsecured Claims in Class Eight with be approximately $230,000.  The estimated distribution to this class is 13 % of the allowed unsecured claims.

**3.40.  Class Ten – Interests of the Debtors.**  Class Ten consists of the interests of the Debtors.  On the Effective Date, title and ownership of all Property of the Estate shall vest in the Debtors free and clear of any lien, claim or interest of a Creditor or party of interest, except as otherwise specifically provided in the Plan or Order Confirming the Plan.  Debtors' excess disposable income will be dedicated to fund the plan as required. Class Ten is Impaired.

**Debtors are specifically authorized  to execute deeds transferring title and private property title documents to reflect the vesting of property in the Debtors.  No such execution shall impair, hinder or impede liens or rights to payments held by creditors granted such lien or rights in this Plan.**

**3.4.  Tax Consequences.**   The Debtor knows of no adverse tax consequences that would arise from the confirmation of the Debtors' Plan, although no professional has been engaged by the Debtor to ascertain such.  As to whether the holder of any claim or interest against this Estate shall suffer any adverse tax consequences from the confirmation of this Plan, the Debtors are not aware of any such adverse consequences,  however, each such holder is directed to procured independent advice as to what tax ramifications, if any, will be encountered by such holder upon confirmation of the Debtor's Plan.

**ARTICLE 4**
**FUNDING, POST-CONFIRMATION OWNERSHIP AND**
**MANAGEMENT, FEASIBILITY AND LIQUIDATION ANALYSIS**

**4.1.  Sources of Funding.**  The Plan is to be funded by the dedication of Debtors' future income, as required; use of Debtors exempt VSI income and use of funds on hand at Confirmation.

After calculating the projected disposable income in accordance with 1325 (b)(2), the Projected

Disposable Income, calculated in accordance with 1325 (b) (2) over the 5 year period following the effective date is $404,022.20. After deducting projected administrative claims ($19,250.00), priority claims ($14,329.08) and secured claims ($370,415.70) above, the portion of the projected disposable income available for Class 8 and Class 9 unsecured creditors is $ 28.62. The Debtors intend to use $49,790 in funds on hand at Confirmation and $ 9,916 in exempt income to increase the total combined distribution to Class 8 and Class 9 to $55,750.20.

           **4.11    Future Income.**    Discussions regarding the projection of future earnings is provided below.

           (a)  The earnings from employment by Teresa Wigington as well as the annual Variable Separation Incentive (VSI) payments that George Wigington receives from the U.S. Navy are deemed to be very steady and reliable and were easily projected with what the Debtors believe is great accuracy. The Debtors will receive the final VSI payment in March of 2015.

           (b)  The earnings from the operations of Wylie Industries by George Wigington presents a much more difficult task. Priority was placed on providing projections that were not overly optimistic as to render the Plan unlikely to succeed. Rebuilding the revenue will take time and effort to regain the trust of the contracting community. Recognition of these difficulties led the Debtors to begin with conservative estimates of earnings with steady but modest increases over a period of years until the earnings return to those obtained prior to the financial melt down. Debtors believe these result are achievable.

           **4.12    Cash on Hand.**    On the Confirmation Date, Debtors estimate that at a minimum they will have $55,000.00 in cash available. The Conversion Trust Fund holds a balance of $26,199.54 as of the date this Plan was filed and the balance in the Debtor In Possession Checking Account is projected to be a minimum of $28,800.46 as of the confirmation date. Projected Effective Date distributions total $15,000.00. The remaining Conversion Trust funds in the amount of $11,199.54 will be deposited in Debtors' personal account. Over the course of the Plan, plan payments will exceed the Projected Disposable Income by $47,790 reducing the Initial Cash on Hand to $7,210.00.

       **4.2.    Post-Confirmation Ownership and Management.**

           **4.21 Management.**    The Reorganized Debtors will be George and Teresa Wigington who will continue to manage their affairs and business after Confirmation and are responsible for the implementation of the Plan. The Wylie Investment Group Partnership will be terminated and cease to exist.

           **4.22 Ownership.**    Except as otherwise provided in 11 U.S.C. §1141(d)(2) and (3), Confirmation of the Chapter 11 Plan consolidates the estates and vests all property of the estates in George D and Teresa L Wigington., free and clear of all claims and interests of creditors except as otherwise specifically provided in the Plan or the Order Confirming the Plan. Specifically included in the property vested in the Reorganized Debtors are all assets, both real and personal property, owned by the Wylie Industries, a Texas General Partnership at the time it was terminated and all assets of the partnership were sold to George Wigington in return for assumption of all partnership liabilities. Specifically included in the property vested in the Debtors are all assets, both real and personal property, owned by the Debtor Partnership Wylie Investment Group,

**4.3.** **Feasibility.** Debtors assert that their Plan is feasible. Income and Expense projections are detailed in Exhibit B.

**4.4.** **Liquidation Analysis.**

**4.41.** **Real Property.** The **Debtors** owns the real property listed in Schedule A (and interest in real property listed in Schedule G) which is shown in Table 3 of Exhibit C.

**4.42**. **Contract for Deed**. The legal title to the Hensley Lane property is held by the Texas Veterans Land Board. Debtors have equitable title as purchasers via a contract for deed. This asset is listed on Schedule G instead of Schedule A since Debtors' interest is actually in an executory contract at this time. This property is included in this analysis for the purposed of full disclosure.

**4.43**. **Personal Property.** **Debtors** owns the personal property listed in Schedule B and is summarized in Table 2 of Exhibit C.

**4.44.** **Liquidation Value of Assets**

**(a)** The **Debtor** has prepared this Liquidation Analysis based on its opinion of the value of its assets. The valuations match the numbers used in its schedules filed with this **Court**.

**(b)** The projected amount available to unsecured creditors, in a Chapter 7 liquidation, is shown in Table 1 of Exhibit C.

**(c)** Since the General Unsecured Creditor Classes will receive property that is not less than they would receive or retain under a Chapter 7 liquidation and the Best Interests Test, Section 1129(a)(7)(A), is satisfied.

**4.5.** **Alternatives to Debtors' Plan.** If the Debtors' Plan is not confirmed, the Debtors' case may be converted to Chapter 7 for liquidation. The Debtors' analysis indicates that unsecured creditors will receive nothing in a Chapter 7 liquidation. Other possibilities include dismissal or proposal of an alternate Chapter 11 Plan by the Debtor or other parties in interest.

**4.6.** **Risks to Creditors Under the Debtors' Plan.** Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates the Debtors' business will generate sufficient revenue that, when combined with the other sources of income, will enable to Debtors to fund the Plan payments. The Debtors cannot guarantee either the income or expense projections made, however, the Debtors have proposed a conservative plan for the operations of Wylie Industries that along with the relatively large, stable income of Teresa Wigington should minimize risk to creditors and permit funding of the Plan which maximizes the return to unsecured creditors.

**4.8** **Tax Consequences**. The Debtor knows of no adverse tax consequences that would arise from the Confirmation of the Debtors' Plan, although no professional has been engaged by the Debtor to ascertain such. As to whether the holder of any claim or interest against this Estate shall suffer any adverse tax consequences from the Confirmation of this Plan, the Debtors are not aware of any such adverse consequences, however, each such holder is directed to procured independent advice as to what tax ramifications, if any, will be encountered by such holder upon confirmation of the Debtor's Plan.

**ARTICLE 5**
**EXECUTORY CONTRACTS**

5.1.    **General Treatment of Executory Contracts.**  The Plan shall serve as a Motion to reject, and as of the Effective Date, the Debtor shall be deemed to have rejected, all Executory Contracts to which the Debtor is a party, except for Executory Contracts that (a) have been assumed pursuant to Final Order of the Bankruptcy Court or by the Plan, or (b) are the subject of a separate motion pursuant to section 365 of the Bankruptcy Code to be filed and served by the Debtor on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365 of the Bankruptcy Code approving the rejection, or assumption, of such Executory Contracts as of the Effective Date.

5.11    **Executory Contracts to be Rejected**
a.  Contract with T-Mobile for Cell Phone Services

5.12    **Executory Contracts to be Assumed.**
a.  Contract with Texas Veterans Land Board for the purchase of the Hensley Lane Property.

5.2.    **Cure Payments.**  Based on the Debtors' books and records, no payments are due on the Executory Contracts to be assumed.  If there is a Cure Claim that requires payment pursuant to Section 365(b)(1) of the Bankruptcy Code on an Executory Contract that is assumed under the Plan or pursuant to a Final Order of the Bankruptcy Court, then it shall be made in accordance with Section 3.21 (Administrative Expense Claim) of the Plan.  If a party to an assumed Executory Contract has not filed an appropriate pleading with the Bankruptcy Court within sixty days after the Effective Date asserting the amount of a claim for Cure Payment, disputing the amount of any Cure Claim Payment offered to it, the cure of any other defaults, the promptness of the Cure Claim Payments, or the provisions of adequate assurance of future performance, then such party shall be deemed to have waived its right to assert or dispute such matters.

5.3.    **Bar to Rejection Claims.**  If the Rejection of an Executory Contract by the Debtor results in damages to the other party or parties to such Executory Contract, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor unless a Proof of Claim is filed with the Bankruptcy Court by the earlier of (a) 60 days after the Effective Date or (b) such other deadline as the Bankruptcy Court may set for asserting a Claim for Damages.

5.4.    **Rejection Claims.**   Any Rejection Claims arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtor of any objections to such Rejection Claim if asserted.

5.5.    **Post-Petition Executory Contracts.**  Debtors have not entered into any executory contracts post-petition.

**ARTICLE VI**
**ALLOWANCE, OBJECTION AND SATISFACTION OF CLAIMS**

6.1.    **Claims Objections.**  Any party authorized by the Bankruptcy Code may object to the allowance of Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim.  Any proof of

Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.  Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.  Notwithstanding the foregoing, any Proof of Claim filed or modified may be Objected to within sixty (60) days of such filing or modification.

      **6.2.**    **No Distribution to Disputed Claims.**  No distribution shall be made with respect to all or any portion of a disputed Claim unless and until such disputed Claim shall have become an Allowed Claim.  To the extent such a disputed Claim becomes an Allowed Claim, distributions to each holder of a disputed Claim shall be made in accordance with the provisions of the Plan with respect to the class to which the respective holder of an Allowed Claim belongs.

      **6.3.**    **Barred Claims.**  All Claims against the Debtor which are neither filed with the Bankruptcy Court on or before the Bar Date nor scheduled by the Debtor as undisputed shall be forever waived and discharged and terminated and may not be asserted against such Debtor by or on behalf of any Claimant.  Likewise, all Claims for which treatment has been provided in the Plan shall be deemed fully satisfied upon the distribution of property or payment of cash as provided herein, and such claimant shall have no further recourse against and does affirmatively release the Debtors and all third parties including Debtors' Chapter 11 attorneys for any liability or causes of action based upon or related to such Claims except as provided under the Plan.  No attorney's fees shall be allowed any creditor herein.

      **6.4**    **Controlling Section.**  In the event that another section of this Plan conflicts with the treatment prescribed for a Class of Claims in Article III, Article III shall govern.

      **6.5.**    **Retention of Liens and Environmental Claims.**  Secured Creditors shall retain the liens or security interests securing their Claims to the extent expressly provided in the Plan, but not otherwise. Payment of a Claim in accordance with the Plan shall extinguish any lien that secures the Claim, and the Creditor shall immediately sign and deliver to the Debtor a release of the lien or security interest, along with the Certificates of Title on any property that secured the Claim.  .  Section 6.5 shall not apply to statutory liens including the statutory liens of the ad valorem tax authorities.

## ARTICLE 7
## DEBTORS' CAUSES OF ACTION

      **7. 1**    **Preservation of Debtors' Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of Debtor or the Estate, to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by Debtors for the benefit of the Creditors subsequent to the Effective Date.  Nothing in this Plan shall act as a bar as it relates to any claims of Debtors against third parties, except as expressly released pursuant to the Plan. Nothing in this Plan or the confirmation of the Plan shall estop the Debtors from asserting claims against third parties.

      **7.2**    **Listing Not to Be Construed as Limiting**.  Debtors have not completed investigation concerning possible recoveries, avoidance actions and prosecution of claims.  At the time that this Plan

was filed, Debtors have preliminarily identified possible actions listed in Section 7.3, but this list is in no way to be construed as to limit or exclude any action not listed.  Possible actions listed in Section 7.3 are not limited to the scope, description or violation listed.  Items not listed are not prohibited.

      **7.3**   **Preliminary Causes of Action.**   The causes of action the Debtors might elect to undertake include but are not limited to:

1. Action against Discover Card for fraud and violation of Texas Deceptive Trade Practices Act, Debt Collection Statutes, etc.
2. Action against Capital One for fraud and violation of Texas Deceptive Trade Practices Act, Debt Collection Statutes, etc.
3. Action against JP Morgan Chase for fraud and violation of Texas Deceptive Trade Practices Act, Debt Collection Statutes, etc.
4. Action against First United Bank and Trust for fraud and violation of Texas Deceptive Trade Practices Act, Debt Collection & Finance Statutes, etc.
5. Action against First United Bank and Trust for failure to disclose material facts in regard to a property transfer.
6. Action against First United Bank and Trust for conversion of property.
7. Action against Steele Freeman/ Celeste ISD/ Colin Clark for breach of contract, violations of Texas Public Prompt Pay act and official misconduct.
8. Action against Michael Wiss for violation of Texas Deceptive Trade Practices Act, legal misconduct, breach of fiduciary duties, etc.
9. Avoid transfer to CACH for prepetition avoidable transfer
10. Avoid unperfected lien of First United Bank and Trust on the Hensley Property
11. Avoid lien on 411 Dogwood due to unrecorded deed of trust transfer
12. Anti-Trust claims against Hill & Wilkinson

### ARTICLE 8
### EFFECTS OF CONFIRMATION

      **8.1**   **Discharge and Release of Debtor**.  Pursuant to Bankruptcy Code Section 1141(d)(2) Confirmation of this Plan does not discharge the Debtors because they are individuals.  After the case is fully administered to the Debtors' satisfaction, the Debtors shall petition the Court for a Conditional Closure of the case.  Upon Order of the Court conditionally closing the case, the U.S. Trustee quarterly fees shall not continue to accrue or be incurred by the Debtors during the time that the case is conditionally closed.  After completion of plan payment to the unsecured creditors, the Debtors may reopen the case to apply for a discharge.  See 11 U.S.C. Section 1141(5).

      **8.2**   **Release Entities**.   None of the officers, financial advisors, Chapter 11 attorneys, or employees of the Debtors shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan.

      **8.3**   **Legal Binding Effect**.  The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141, shall bind Debtors and all Creditors, whether or not they accept this Plan.  The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

      **8.4.**   **Permanent Injunction**  Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtorsand any other entity against

whom prosecution of any Claims could result in a Claim being asserted against the Debtors that could arise directly or indirectly out of a claim against the Debtors.

From and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtors, their assets, or against their financial advisors or Chapter 11 attorneys; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets of the Debtors, the Debtors or against their financial advisors or Chapter 11 attorneys; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets of the Debtors, or the Debtors, or against their financial advisors or Chapter 11 attorneys; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan; *provided however,* that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Allowed Claims shall be entitled to enforce his rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall continue until the Debtors have been granted a discharge by the Court, or such Creditor is paid in full as called for by the Plan.

**8.4.** **Release of Fund From Conversion Trust Account.** Upon Confirmation of this Plan, Gregory W. Mitchell is authorized to release excess funds from the Conversion Trust Account to the Debtors. Sufficient funds shall be retained to pay all distributions scheduled to be paid on or before the Effective Date, including but not limited to allowed administrative claims. Funds in the amount of the estimated legal fees due through the Effective Date plus any retainer for legal services post-confirmation are to be distributed from the Conversion Trust Funds into Gregory W. Mitchell's personal trust account until the Court approves the fee and expense application. Any funds dedicated to a claim scheduled to be released on the Effective Date that are disputed shall be held in the Conversion Trust Fund until final resolution by Court order.

**ARTICLE 9**
**MODIFICATION OF PLAN**

**9.1.** **Modification to the Plan**. In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtors, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy court, after notice and a hearing, confirms that Plan, as modified under Section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtors consent thereto in writing. If the Debtors are individuals the Plan may be modified at any time after Confirmation of the Plan, but before the completion of payments under the Plan, whether or not the Plan has been substantially consummated upon request of the Debtors, the United States Trustee, or the holder of an allowed unsecured claim, to (1) increase or reduce the amount of payments on claims of a particular class provided for by the Plan: (2) extend or reduce the time period for such payments; or (3) alter the amount of the distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payments of such claim made other than under the Plan.

**ARTICLE 10**
**MISCELLANEOUS PROVISIONS**

**10.01    Request for Relief Under Bankruptcy Code Section 1129(b)**    In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), Debtor reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02    Revocation**.  Debtor reserves the right to revoke and withdraw this Plan at any time prior to Confirmation.

**10.03    Effect of Withdrawal or Revocation**.  If Debtor revokes or withdraws this Plan prior to Confirmation, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other person or to prejudice in any manner the rights of Debtor or any person in any further proceedings involving Debtor.

**10.04    Due Authorization by Creditors**.  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05    Entire Agreement**.  This Plan, as described herein, the Confirmation Order and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06    Section 1146 Exemption**.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07    Provisions Governing Distributions**.  All payments and distributions under the Plan shall be made by Debtor as indicated.  Any payments or distributions to be made by Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of Debtor, and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check must be made within ninety (90) days after the date of delivery of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08 <u>Governing Law</u>.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09 <u>Default</u>.** If Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to Debtor, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to Debtor, c/o Gregory W. Mitchell, The Mitchell Law Firm, L.P., at (972) 463-8417.

**10.10 <u>Disbursing Agent.</u>** The Debtors will act as disbursing agents for all distributions to be made under this Plan of Reorganization. The disbursements will be made by checks drawn by the disbursing agents. The Debtors shall not be liable for any acts or failures to act in its capacity as disbursing agent in the absence of proof of bad faith or gross negligence. If the Debtors are unable or unwilling to perform the duties of the disbursing agent, the Court shall appoint a successor disbursing agent.

**10.11 <u>Severability.</u>**

If, prior to the entry of the Confirmation Order, any term or provision of the Plan of Reorganization is held by the Bankruptcy Court to be invalid, void, unenforceable or non-compliant with the Bankruptcy Code, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, unenforceable, or non-compliant, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, unless requested by the Debtor, the remainder of the terms and provisions of the Plan of Reorganization will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan of Reorganization, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable pursuant to its terms.

**10.12 <u>Insiders.</u>**

The following persons are insiders with regard to the Debtors – Sue Lynes, Wayne Wigington, Gary Bartow.

# ARTICLE 11
## RETENTION OF JURISDICTION

Notwithstanding Confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**11.01 <u>Allowance of Claims</u>.** To hear and determine the allowance of all Claims upon objection to

such Claims.

**11.02** **Executory Contracts and Unexpired Leases Proceedings.** To act with respect to proceedings regarding the assumption or rejection of any executory contract or unexpired lease of Debtor pursuant to Sections 365 and 1123 of the Code and Article V of the Plan.

**11.03** **Plan Interpretation.** To resolve controversies and disputes regarding the interpretation of the Plan.

**11.04** **Plan Implementation.** To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**11.05** **Plan Modification.** To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules.

**11.06** **Adjudication of Controversies.** To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against Debtor .

**11.07** **Injunctive Relief.** To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**11.08** **Interpleader Action.** To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**11.09** **Correct Minor Defects.** To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**11.10** **Authorization of Fees and Expenses.** To review and authorize payment of professional fees incurred prior to the Effective Date.

**11.11** **Ownership of Property.** To adjudicate all Claims to an ownership interest, or claimed ownership interest, in any property of the Debtor and/or Debtor's Estate.

**11.12** **Recovery.** To recover all assets and properties, including by lawsuit, of the Debtor's estate wherever located.

**11.13** **Liens/Security Interests.** To determine the validity, extent and priority of all Liens and security interests against property of the Debtors estate.

**11.14** **Determine Taxes.** To hear and determine claims concerning Federal, State, and local taxes pursuant to Sections 346, 505, 525 and 1146 of the Code.

**11.15** **Actions.** To hear and determine any action or proceeding brought by Debtors or the Reorganized Debtors under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

**11.16** **Core Proceedings.** To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

**11.17 Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**11.18 Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

**11.19 Grant a Discharge**. The Court shall retain jurisdiction to grant a discharge of the Debtors after completion of the payments called for by the Plan.

**11.20 Reopen  Case**.  The Court shall retain jurisdiction to reopen the case to consider and grant a discharge to Debtors.

**DATED this 6th day of February, 2013.**

Respectfully submitted,

THE MITCHELL LAW FIRM, L.P.

**/s/   Gregory W. Mitchell**
Gregory W. Mitchell
8140 Walnut Hill Lane, Suite 301
Dallas, Texas  75231
(972)463-8417
Facsimile:  (972)432-7540
State Bar ID:  00791285
E-mail:  greg@mitchellps.com

ATTORNEY FOR GEORGE AND TERESA
WIGINGTON

## CERTIFICATE OF SERVICE

I hereby certify that on **February 06, 2013**, a true and correct copy of the foregoing was served via U.S. Mail and/or the court's ECF system to the parties listed below.

THE MITCHELL LAW FIRM, L.P.

/s/  **Gregory W. Mitchell**
Gregory W. Mitchell
Attorney for Debtor

<u>Debtor</u>:

George D Wigington and Teresa L Wigington

2451 Elm Grove Road

Wylie Texas 75098

<u>U.S. Trustee</u>

Office of the U.S. Trustee

Eastern District of Texas

110 N College Ave, Ste 300

Tyler, TX 75702