Gregory W. Mitchell
THE MITCHELL LAW FIRM, L.P.
8140 Walnut Hill Lane, Suite 301
Dallas, Texas  75231
(972)463-8417
Facsimile:  (972)432-7540
State Bar ID:  00791285

ATTORNEYS FOR THE DEBTORS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **GEORGE D WIGINGTON AND** | § | Case No. 11-41092 |
| **TERESA L WIGINGTON,** and | § | |
| **WYLIE INVESTMENT GROUP** | § | Case No. 13-40360 |
| | § | |
| | § | **(Jointly Administered under** |
| *Debtors* | § | **Case No. 11-41092)** |

**MODIFICATION TO PLAN OF REORGANIZATION DATED FEBRUARY 6, 2013**

COME NOW, George Dale Wigington and Teresa Lynn Wigington (the "**Individual Debtors**") and Wylie Investment Group (the "**Partnership Debtor**"), (collectively the "**Debtors**") and file this *Modification to Plan of Reorganization Dated February 6, 2013* (the "**Modification**") pursuant to Federal Rule of Bankruptcy Procedure 3019, and would respectfully show the Court as follows:

### I. PROCEDURAL HISTORY

1. Debtors filed their *Second Joint Combined Plan and Disclosure Statement* (the "**Plan and Disclosure Statement**") in the Individual Debtors' case on February 6, 2013, and in the Partnership Debtor's case on February 25, 2013.  The Court conditionally approved the Plan and Disclosure Statement in the Individual Debtors' case on February 7, 2013, and it approved the Disclosure Statement in the Partnership Debtor's case on April 10, 2013.

2. The Court ordered the Individual Debtors' case administratively consolidated with the Partnership Debtor's case on March 19, 2013.

3. On April 23, the Court commenced the confirmation hearing on the Plan (the "**Initial Confirmation Hearing**"). At the Initial Confirmation Hearing, the Debtors announced an agreement had been reached with secured creditor First United Bank & Trust (the "**FUBT Agreement**"). After determining that the FUBT Agreement was tantamount to the election by Debtors of an alternative treatment of FUBT provided for in the Plan, the Court determined that the FUBT Agreement did not work a material modification of the Plan. However, the Court continued the confirmation hearing until April 30, 2013 (the "**Continued Confirmation Hearing**"), to hear evidence to prove up feasibility of the modified plan and to determine the satisfaction of the best interests of the creditors' test pursuant to a revised liquidation analysis.

4. In accordance with Bankruptcy Rule 3019(a), to the extent applicable, the Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date. After a plan has been accepted and before its confirmation, the Debtor may file a modification of the plan. If the Court determines that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

## II.  CLASSES ACCEPTING THE PLAN

5. Prior to the modifications sought to be approved herein, with the exception of FUBT's secured claims, all classes voting had voted to accept the Plan. If the modifications described herein are approved by the Court, all classes will have accepted the Plan, and all objections to the Plan will have been withdrawn.

6. The following modifications to the Plan (the "**Modifications**") are not material and adverse to any claimant.

## IV.  MODIFICATIONS

7. The following language is to be inserted after the fifth paragraph in Section **3.21 Allowed Administrative Expense Claims:**

"Dallas County is the holder of an administrative expense claim for year 2012 ad valorem

1390400v.1 1875/0046

property taxes.  Pursuant to 11 U.S.C. Section 503(b)(1)(D), Dallas County is not required to file and serve its administrative expense claim as a condition of allowance.  Dallas County shall receive payment of its administrative expense claim in the ordinary course prior to the state law delinquency date.  Dallas County shall retain the liens that secure 2012 ad valorem property taxes plus any penalties, interest and attorney's fees that may accrue and the statutory priority of those liens."

8. The following language is to be inserted after the first paragraph in Section **3.22 Allowed**

**Unsecured Priority Tax Claim (IRS):**

"The Allowed Priority claim shall be paid in full with interest at the rate of 3% per annum.

All payments will be sent to:  IRS, Attention: Bill Morse, 1100 Commerce Street,  Mail Code 5024 DAL, Dallas, TX 75242.

If the Debtors fail to make any Plan payment, or deposits of any currently accruing employment or sales tax liability; or fail to make payment of any tax to the IRS within ten (10) days of the due date of such deposit or payment, or if the Debtors fail to file any required federal tax return by the due date of such return, then the IRS may notify the Debtors in writing that the Debtors are in default of the Plan.  Failure to declare a default does not constitute a waiver by the IRS of the right to declare that the Debtors are in default.

If the Debtors do not cure the default within fourteen (fourteen) days of such notice, that shall constitute an "IRS Default" and the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately, and the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code.  The IRS shall only be required to send two notices of default, and upon the third event of default an IRS Default will be deemed t have occurred and the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtors."

9. The following paragraph is inserted after the second paragraph of Section **3.23 Allowed**

**Unsecured Priority Ad Valorem Tax Claims (Wylie ISD, Collin County Tax Assessor Collector):**

"a. Allowed Priority Ad Valorem Tax Claims (Collin County Tax Assessor/ Collector) - Once allowed, each holder of an Allowed Claim for Priority ad valorem taxes shall be paid the Allowed amount of the claim pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code as follows:  The Allowed Priority ad valorem tax claims of the Collin County Tax Assessor/Collector (hereinafter "CCTAC"), in the estimated sum of  $12,133.98,  shall be paid in full, with interest at the rate of 12% per annum, in monthly installments beginning on the Effective Date and continuing on the same day each month thereafter until such Allowed Claim has been paid in full.  The repayment term shall not exceed five years from the Date of the Order for Relief under Chapter 11.

Ad valorem property taxes assessed by CCTAC for tax years 2013, and for all subsequent years assessed post petition, shall be paid in the normal course of the business and/or financial affairs of the Debtors.  Nothing herein shall affect the validity of CCTAC's respective statutory tax liens, which shall continue to attach to the property against which

such taxes have been assessed as per the provisions of the constitution and the laws of the State of Texas, to secure repayment of sums owed to CCTAC.

Debtors' failure to remit the monthly installment payments contemplated herein or to otherwise comply with the terms of the Debtors' Plan of Reorganization is an event of default. Debtors' failure to pay the 2013 and/or subsequent year taxes as they become due is also an event of default. In the event of a default, CCTAC may give written notice of such default to counsel for the Debtors. Should the event of default not be cured within thirty (30) days from the date of transmission of the notice of default, CCTAC shall be entitled to proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. CCTAC shall not be required to provide more than two (2) notices of default. Upon the occurrence of a third event of default, CCTAC shall be entitled to proceed to collect all amounts owed pursuant to state law outside of the bankruptcy court without further notice to the Debtors or their counsel."

10. Section **3.31 Class One – Secured Claim of Denton County** is to be deleted in its entirety and the following language is to be inserted in its place:

"**3.31 Class One – Secured Claim of Denton County**. (216 W Grove, Pilot Point). Once allowed, the Allowed Secured Claim of Denton County for ad valorem taxes for 2009, 2010, 2011 and 2012 shall be paid with interest at the statutory rate of 12% per annum in regular quarterly installment payments, beginning 60 days after the Effective Date and continuing on the same day of each quarter thereafter until the Allowed Secured Claim with interest as provided herein has been paid in full. The repayment period shall not exceed 6 (six) years. Denton County shall retain their statutory liens until their allowed secured claim is paid in full. Class One is impaired and is allowed to vote in Class 1.

Interest on the claim shall be 12% per year from the Petition date through payment in full.

The 2013 taxes will be paid in the ordinary course of business without the necessity of Denton County filing an administrative claim.

Notwithstanding the previous paragraphs of Section 3.31, at the sole option of the Reorganized Debtors, the Reorganized Debtors may elect to surrender the Collateral securing Denton County's Allowed Secured Claim in full satisfaction of its Allowed Secured Claim."

11. The following language is to be inserted after the first paragraph in Section **3.33 Secured Claim of American National Bank.**

"ANBT shall have an allowed secured claim of $31,000 and no allowed unsecured claim.

In addition to the treatments identified in paragraph one of this section, ANBT has agreed that the Debtors may elect to satisfy the allowed secured claim by providing ANBT a new promissory note secured by the same pre-petition collateral, in the same pre-petition priority, subject to the same non-monetary terms and payable monthly over 5 years at 5% interest with payments beginning on the Effective Date. Debtors shall execute documents complying with these terms at the request of ANBT."

12. The following language is to be inserted after the first paragraph in Section **3.1. Treatment of Claims:**

"For claims in which the Debtors have proposed alternate treatments, the Debtors shall notify the claimant of which method the Debtors intend to elect to satisfy the claim no later that the Effective Date. The Debtors shall act upon its election and transfer such payment/ property/ rights as of the Effective Date with regard to the option Debtors have selected to satisfy claimants allowed claim."

13. **3.39. Class Eight – General Unsecured Claims of Wylie Investment Group** is to be deleted in its entirety and the following language is to be inserted in its place.

"**3.38. Class Eight – General Unsecured Claims of Wylie Investment Group  -** The allowed unsecured claims of Wylie Investment Group shall be paid in full on the Effective Date. Class Eight is unimpaired. The estimated total allowed unsecured claims of this class is $1,577.00. As of April 24, 2013, the total unsecured claims filed in Class Eight were $1,202.00.

First United Bank and Trust shall not have an allowed unsecured claim against Wylie Investment Group and shall not participate in Class Eight distributions. "

14. Section **3.34 Class Four – Secured Claim of First United Bank and Trust (216 W Grove, Pilot Pt TX/ Hensley Lane, Wylie TX – 2nd Lien,/misc equip).** is to be deleted in its entirety and the following language is to be inserted in its place:

"**3.34 Class Four– Secured Claim of First United Bank and Trust  (Real property at 216 W Grove, Pilot Pt. TX and miscellaneous  equipment owned by WIG).**

FUBT is allowed a secured claim in the amount of $442,094.03 (Unpaid Principal Balance of $351,025.60, Accrued interest of $42,068.43 and attorneys' fees of $49,000.00). Debtors stipulate and agree that FUBT has a valid and properly perfected first priority lien on the Pilot Point Property.

FUBT's claim shall be satisfied in full by the non-judicial foreclosure by FUBT of the real property, building and fixtures located at 216 W. Grove, Pilot Point, TX ("Pilot Point Property"). The 11 U.S.C. § 362 stay is immediately terminated and no plan injunction shall take effect as to FUBT with respect to the Pilot Point Property. FUBT is authorized to immediately take any and all actions necessary to post the Pilot Point Property for a non-judicial foreclosure sale to be held on June 4, 2013, or any date thereafter.

FUBT releases any and all interests in the equipment owned by WIG.

By not later than May 2, 2013, Debtor shall dismiss Adversary Proceeding 13-04042 filed by the Debtors against FUBT.

FUBT hereby withdraws all claims filed in the Individual Debtors' bankruptcy case, and FUBT hereby withdraws any objection to the Debtors' Plan.

1390400v.1 1875/0046

15. Section **3.35 Class Five – Secured Claim of First United Bank and Trust (Hensley Lane, Wylie TX).** is to be deleted in its entirety and the following language is to be inserted in its place:

**"3.35 Class Five – Secured Claim of First United Bank and Trust (Hensley Lane, Wylie, TX).** FUBT shall not have a secured claim allowed with regard to the Hensley Lane Property or the contract for deed with the Texas Veterans Land Board to purchase the Hensley Lane Property. FUBT stipulates and agrees that FUBT does not have a valid lien on the Hensley Lane Property nor the contract for deed with the Texas Veterans Land Board to purchase the Hensley Lane Property.

By not later than May 2, 2013, FUBT shall execute a release of any and all liens FUBT holds against the Hensley Lane Property. The form of release shall be in a form acceptable to both FUBT and the Debtors. First United Bank and Trust agrees that it shall have no allowed secure claim and no allowed unsecured claim against George Dale Wigington and Teresa Lynn Wigington.

By not later than May 2, 2013, Debtor shall dismiss Adversary Proceeding 13-04042 filed by the Debtors against FUBT.

16. The following language is to be inserted after the first paragraph in Section **3.9. Class Nine – General Unsecured Claims of George and Teresa Wigington**

"First United Bank and Trust shall not have an allowed unsecured claim against George Dale Wigington and Teresa Lynn Wigington and shall not participate in Class Nine distributions."

17. The following language is to be inserted after the first paragraph in Section **7.3 Preliminary Causes of Action:**

"Pursuant to the settlement agreement between the Debtors and FUBT, the Debtors will release causes of action numbers 4,5,6 and 10 above (valued at $3,000 in the Debtors schedules) and FUBT will release its lien on personal property of the Debtors (valued at $4,250 per the Debtors schedules). The personal property (equipment) securing this lien is more fully discussed in Plan Sections 3.35 and 2.31(b)(2) and Schedule B of Wylie Investment Group.

Debtors forever waive and release any and all claims and causes of action against FUBT listed in the Plan, including but not limited to, causes of action 4, 5, 6 and 10 listed in Debtor's Plan dated February 6, 2013. In addition, Debtors forever waive and release any and all claims that Debtors could have been brought against FUBT through the Effective Date of the Plan.

FUBT shall release any and all claims against the Debtors except for the secured claim against 216 W. Grove, Pilot Point, Texas which shall be satisfied by foreclosure as described above in the treatment of FUBT's Class Four and Class Five claims.

Upon surrender of the real property (216 W. Grove Street, Pilot Point TX), First United Bank and Trust waives any and all claims against Wylie Investment Group, George Dale Wigington and Teresa Lynn Wigington ("Debtors" Collectively) and their property, including any and all claims that FUBT could have brought against the Debtors through the Effective Date of the Plan.

The intent of the settlement agreement between the Debtors and FUBT is 1) to release, settle and waive all claim and liabilities (whether stated or unstated) between FUBT and the Debtors, 2) for Debtors to relinquish and FUBT to obtain full title and interest in the real property of 216 W. Grove Street, Pilot Point TX per section 3.34 of the Plan, 3) for FUBT to retain its lien on 216 W. Grove Street, Pilot Point TX and release all other liens on property of the Debtors or their estates, and 3) for FUBT to receive no other distribution of money or property under any other section in this Plan or by any means whatsoever. The agreement to settle claims and transfer the Pilot Point property is effective between the parties regardless of the outcome of the Debtors' bankruptcy cases and survives dismissal, conversion and confirmation.

**DATED this 29th day of April, 2013.**

Respectfully submitted,

**THE MITCHELL LAW FIRM, L.P.**

**/s/   Gregory W. Mitchell**
Gregory W. Mitchell
8140 Walnut Hill Lane, Suite 301
Dallas, Texas  75231
(972)463-8417
Facsimile:  (972)432-7540
State Bar ID:  00791285

1390400v.1 1875/0046